# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

_____

UNITED STATES OF AMERICA              CRIMINAL NO: 11-189-01

VERSUS                              JUDGE ELIZABETH E. FOOTE

ALBERT LITTLE                   MAGISTRATE JUDGE HORNSBY

_____

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Documents 456 & 457], filed by Defendant Albert Little ("Little"). The United States responded to the motion [Record Document 471], and Little filed a reply [Record Document 474] and a request for an evidentiary hearing [Record Document 468].[1] For the following reasons, the section 2255 motion [Record Document 456] and the request for an evidentiary hearing [Record Document 468] shall be **DENIED.**[2]

## BACKGROUND

Little is the former Sheriff of Winn Parish, Louisiana. On July 29, 2011, a fourteen count indictment was returned by a federal grand jury against Little and his co-defendants. Little was charged in Count One with conspiracy to posses with intent to distribute fifty

_____

[1] The Court has also considered the medical records submitted in connection with Little's motion to expand the record. Record Document 536.

[2] Because Little's claims are refuted by the record and insufficient as a matter of law to satisfy his burden under § 2255, no evidentiary hearing is required. See United States v. Green, 882 F.2d 999, 1008 (5th Cir. 1989). The motion for an evidentiary hearing is **DENIED**.

grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Count Five charged him with possession with intent to distribute five grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2. Finally, Counts Seven and Eleven charged Little with the use of a communication facility in facilitating the commission of a drug offense, in violation of Title 21, United States Code, Section 843(b).

Prior to trial, all of Little's co-defendants entered pleas of guilty. Little proceeded to trial alone. A four day jury trial commenced on February 21, 2012. At the close of evidence on the third day of trial, Little made a Rule 29 motion for judgment of acquittal. The Court reserved its ruling until a jury verdict was reached. On the fourth day, after the jury convicted Little of all four counts against him, the Court denied Little's Rule 29 motion. After trial, Little filed a motion for judgment of acquittal, which this Court also denied with written reasons. See Record Document 360. On August 29, 2012, this Court sentenced Little to 160 months' imprisonment with five years of supervised release to follow. See Record Document 394. On August 6, 2013, the Fifth Circuit Court of Appeals affirmed Little's conviction and sentence. See Record Document 445. He then timely filed the instant section 2255 motion.

In his motion, Little contends that his trial counsel was constitutionally ineffective and asks this court to vacate his conviction. First, Little argues that counsel was ineffective in failing to ensure Little's presence for all portions of voir dire. Second, Little argues that counsel was ineffective because a lackadaisical attitude was exhibited during jury selection.

Third, Little argues that the Court improperly removed a juror for "dubious reasons."
Record Document 457-1, p. 8. Fourth, Little argues that counsel was ineffective for
denying Little the right to testify on his own behalf. Fifth, Little argues that counsel was
ineffective for failing to present a plea-related counter-offer to the Government in which
Little offered to plead to official oppression or misprision of a felony. Sixth, Little argues
that counsel was ineffective for failing to allow him to review the presentence report prior
to sentencing. Seventh, Little argues counsel was ineffective for failing to raise any of the
aforesaid errors on direct appeal. And finally, Little cites the cumulative error doctrine,
arguing that cumulatively, all of these errors require his conviction to be vacated.

It is worth noting that at trial, Little was represented by two attorneys. Upon his
initial indictment, Little was represented by retained criminal attorney Taylor Townsend
("Mr. Townsend"). Mr. Townsend represented Little throughout pretrial and trial
proceedings. Shortly after indictment and after Little's bond was revoked for conduct
unrelated to the instant motion, Ansel Martin Stroud, III ("Mr. Stroud") enrolled as Little's
second retained counsel and likewise remained enrolled throughout pretrial, trial, and post-
trial proceedings.

## LAW & ANALYSIS

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a
sentence imposed by a federal court when: (1) the sentence "was imposed in violation of
the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to
impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by

law[;]" or (4) the sentence "is otherwise subject to collateral attack."  United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a).  "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" United States v. Cooper, 548 F. App'x 114, 115 (5th Cir. 2013) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)) (internal quotations and citations omitted).  Rather, after a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted."  United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 164 (1982) (internal marks omitted)).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Young, 77 F. App'x 708, 709 (5th Cir. 2003) (citing United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992)).  Courts may consider claims for ineffective assistance of counsel brought for the first time in a § 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to establish either prong of the Strickland test will result in a finding that counsel's performance was constitutionally effective. Id.; see also Tucker v. Johnson, 115

F.3d 276, 280 (5th Cir. 1997).  The petitioner bears the burden of proof on both components of the Strickland standard.  See Strickland, 466 U.S. at 687.

As to the first prong, in determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal marks omitted).  If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999).  "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." United States v. Payne, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting Lockhart v. McCotter, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[3] Strickland, 466 U.S. at 694.  "A reasonable

---

[3] The Strickland court outlined the extent of prejudice that must be established by the defendant:

probability is a probability sufficient to undermine confidence in the outcome." Id.  A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).   Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying Strickland's prejudice element." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001).   Moreover, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998).  The prejudice element requires more than a mere allegation; the defendant must affirmatively prove it.  United States v. Thompson, 44 F.3d 1004, *2 (5th Cir. 1995). Because both prongs of Strickland must be satisfied, a court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the remaining prong.  See Strickland, 466 U.S. at 689-94.

---

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. . . .
>
> . . .
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.
>
> . . .
>
> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Strickland, 466 U.S. at 691-95.

1. <u>Individualized Voir Dire.</u>

Little's first challenge attacks defense counsels' failure to ensure his presence at individualized voir dire in the robing room. A criminal defendant has a right, protected by both the Constitution and the Federal Rules of Criminal Procedure, to be present at trial. <u>United States v. Gagnon</u>, 470 U.S. 522, 526-27 (1985). Federal Rule of Criminal Procedure 43 codifies the Fifth and Sixth Amendment rights to be present at trial, including jury impanelment. <u>See</u> Fed. R. Crim. P. 43(a)(2). "One purpose of the right to presence is to protect the defendant's exercise of his peremptory challenges, which means the defendant should be allowed to obtain as much first hand information as feasible to facilitate his ability to participate in the selection of a jury." <u>United States v. Curtis</u>, 635 F.3d 704, 715 (5th Cir. 2011) (internal marks omitted). Two requirements stem from the defendant's right to be present. "First, the defendant must be present for the substantial majority of the jury-selection process. Second, the defendant must be present in the courtroom at the moment when the court gives the exercise of peremptory challenges formal effect by reading into the record the list of jurors who were not struck. Where these requirements are satisfied, a defendant's right to presence is not violated by a short absence during one portion of jury selection." <u>Id.</u>

During Little's trial, the Court conducted the majority of voir dire in the courtroom. When jurors indicated a need for privacy in order to answer a question, or if they indicated strong feelings in response to a question asked of them in open court, the Court and the attorneys adjourned to the robing room to question those particular jurors individually. The

private questioning of the jury venire lasted from approximately 3:30 p.m. until 8:00 p.m. Record Document 598 p. 83-84, 277. The jurors were only questioned about the specific issue that precipitated the private conference in the first place. That is, if a juror expressed prior knowledge about the case, the juror was asked about that in private; if a juror expressed strong opinions about law enforcement, the juror was questioned about those feelings in private; if a juror had preconceived notions about public officials, the Court asked about those feelings in private. In other words, every juror who was questioned in the robing room had been questioned in open court. The individualized voir dire in the robing room was conducted in this manner in order to avoid possibly tainting others in the jury pool. The individualized voir dire often, but not always, resulted in a challenge for cause. No one objected to the individualized voir dire procedure, nor does Little object to the use of this procedure in the instant motion. Rather, Little's objection is that while he was present for all of voir dire that occurred in the courtroom, he asserts he was not present for the individualized voir dire in the robing room.

Surprisingly, the Government fails to acknowledge Little's constitutional right to be present during jury selection. It neither analyzes the force of his claim under the law, nor does it examine his challenge under the Strickland standard. Further, the affidavits of Mr. Townsend and Mr. Stroud, submitted by the Government in support of its opposition to Little's section 2255 motion, likewise fail to address Little's claim that they waived his presence during individualized voir dire.

The Court's own review of the record reveals that Little was present for the majority of jury selection. He was in court when voir dire began, Record Document 598, p. 2, and he remained present throughout the proceedings in the courtroom. He does not contend otherwise. He was given the opportunity to consult with his defense team before the peremptory challenges were submitted to the Court,[4] and he does not contend otherwise. He was present in the courtroom when the peremptory challenges were given formal effect by way of the jury impanelment. He does not contend otherwise.

Hence, the case before the Court is not one in which the defendant was absent from the whole of voir dire or from jury impanelment. Rather, Little's claim is that he was excluded from a portion of voir dire, over his objection to his attorneys. The record does not support his claim. First, the Court's normal practice is to allow a defendant to participate in the individual voir dire in the robing room. The only instance in this case where the record establishes Little's absence was in derogation of the Court's usual practice and was specifically noted for the record. Record Document 598. On that occasion, during voir dire, the Government requested a sidebar. The Court and the parties retired to the robing room where the following exchange occurred:

Mr. Stroud:   I want you to know, for the record, our client is not present.

The Court:   Do you want him present?

Mr. Stroud:   I think I know what Joe [Jarzabek] is going to ask. So faced with that, I just waive it. We can put it on the record later; we're not making any decisions right now.

_____

[4] The defense was allowed a twenty minute break to discuss and select its peremptory challenges in private. Record Document 598, p. 277.

Id. at p. 70.  AUSA Jarzabek proceeded to inform the Court that instead of asking probing questions in open court, he preferred to make a list to identify members of the jury pool who required private questioning. Id. at 70-71.  The Court and the attorneys then returned to open court.  Id. at 71.  Mr. Stroud's remark, noting Little's absence, stands in isolation on the record, as it is the only time there was ever any indication that Little was not present during a conference regarding jury selection.

Further bolstering the Court's impression that Little was present for individual voir dire is the phrasing defense counsel used when questioning a potential juror.  Mr. Townsend stated, "I can only imagine my client's sitting here thinking that he's sorry you're having to go through this . . . ."  Id. at 211.  This supports the inference that Little was, indeed, present in the robing room.  Thus, the record does not support Little's claim that he was excluded from individual voir dire in the robing room.

However, assuming arguendo that Little could establish that his attorneys caused a violation of his right to be present at voir dire, Little's ineffective assistance of counsel claim nevertheless fails under the second prong of Strickland, which requires a showing of prejudice.  Little must establish that "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

To meet this burden, Little argues that "not being present during the questioning of the jurors prejudiced him by not affording him a fair and impartial jury of his peers. Perhaps Little had arrested or issued citation to some of the members of the pool but with

him not being present, there would be no way of knowing." Record Document 457, p. 3. However, it has already been conclusively established that Little was, in fact, present for all of the voir dire conducted in the courtroom. As stated above, every juror in the venire was questioned in open court in front of Little, even if they were later questioned in the robing room. Thus, Little personally saw the jury venire, listened to their answers, and observed their demeanor during questioning. His insinuation that he was deprived of a chance to expose someone lurking on the jury venire is frivolous, as Little could have alerted his counsel to any particular juror about whom he was concerned– after having personally observed each juror in the courtroom-- so that those issues could be explored.

Furthermore, simply stating that Little was prejudiced by not receiving a fair and impartial jury is a wholly conclusory allegation with no basis in fact. Conclusory allegations are insufficient to carry Little's burden. There is no evidence in the record, nor even an implication, that the jury was not fair and impartial. Moreover, Little does not elaborate on how his presence or active participation in the robing room would have resulted in a different jury and hence a different verdict. The Court concludes that Little has failed to demonstrate any prejudice he suffered as a result of his attorneys' alleged failure to ensure his presence in the robing room.

  2. Remarks by Mr. Townsend during Voir Dire.

Little submits that Mr. Townsend rendered ineffective assistance of counsel by expressing remarks during voir dire which demonstrated a lackadaisical attitude about the significance of Little's trial. Little argues that he was "prejudiced by the improper or lack

of questioning by his defense attorney to eliminate bias." Record Document 457, p. 5. This claim is plainly contradicted by the record. Voir dire began shortly after the lunch hour, Record Document 598, p. 2, and continued until after 8:00 p.m, id. p. 277. Mr. Townsend engaged in hours of voir dire, questioning members of the jury venire, exposing strong opinions and biases of some, while rehabilitating others. The record is replete with examples of his efforts to secure a fair and impartial jury for his client. That Mr. Townsend made a few stray remarks about the lateness of the hour, or the length of the voir dire process, does not constitute deficient performance. Little fails to demonstrate both that Mr. Townsend performed deficiently and the prejudice Little suffered as a result. This claim is without merit.

      3.    <u>Removal of a Juror</u>.

Little next challenges the Court's removal of a juror, arguing that "the court improperly removed [the juror] for dubious reasons, thereby denying Little a fair and impartial jury of his peers . . . ." Record Document 457, p. 8. This is not an ineffective assistance of counsel claim. Indeed, in his Reply, Little clarifies: "The defendant does not argue that the attorneys were deficient for failing to object to the excusal by the Court of a juror . . . . The Petitioner's claim in this regard is against the Court, not his trial counsel." Record Document 474, p. 4.

Habeas review is not a substitute for an appeal. Claims not raised on direct appeal may not be raised for the first time in a section 2255 motion unless the petitioner establishes both cause and prejudice. <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).

Little had the opportunity to raise this issue on direct appeal to the Fifth Circuit and failed to do so.  He has not even attempted to demonstrate cause or prejudice for the failure to pursue this on direct appeal.  The Court will not consider it here.

Nonetheless, the Court will note for the record that it retains the discretion to remove a juror whenever it becomes convinced that the juror's ability to perform his job has become impaired.  United States v. Virgen–Moreno, 265 F.3d 276, 288 (5th Cir. 2001). The record in this matter provides the necessary factual support for the Court's decision to discharge the juror.[5]  And significantly, Little has failed to demonstrate that he was prejudiced by the removal of the juror.  See United States v. Kiel, 658 F. App'x 701, 705-06 (5th Cir. 2016).  This claim fails.

    4.    Little's Right To Testify at Trial.

Little's next claim is that his attorneys prevented him from testifying during his trial. He submits that his attorneys denied him the right to "counter[] the perjured testimony of

---

[5] The juror in question submitted a note during the Government's case-in-chief that informed the Court she was related to Tony Patterson ("Patterson").  See Record Document 419, p. 266.   While Patterson was not a witness at trial, his name was mentioned during witness testimony regarding a drug sale.  The juror informed the Court that she "know[s] what he does is wrong," but "we poor people just don't have a lot, and he's helped us out, and he has helped me a lot."  Id.  The juror expressed that she was thankful Little, when he was Sheriff, had not tried to "go after" Patterson.  Id. at p. 268.  When asked by the Court if this might affect how she feels about Little, the juror answered, "I think it could.  I'm not saying that it would, but it possibly could. The fact that he didn't go after my cousin and everybody been trying to get him, I'm glad that he didn't go after him.  Because like I said, he's helped me out a few times." Id. at 268-69.  After consultation with the attorneys on the record, the Court excused the juror.  Id. at 273-74.

the government witnesses and testif[y] on his own behalf." Record Document 457, p. 11.

If he had been permitted to testify, he would have

> clearly . . . and credibly challenged the perjured testimony of the government witnesses Chris Jordan and Lulu Thompson, and challenged it successfully. However, due to [the] denial of his right to testify, it was left to the jury to receive the testimony of a known and felonious drug addict over the highest law official in the town.

Id. Thus, Little argues, his attorneys performed deficiently.

"The decision of whether to testify belongs to the defendant and his lawyer cannot waive it over his objection." United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002).

As the Fifth Circuit aptly explained,

> To hold otherwise is to ignore the fact that the defendant's right to testify is secured by the Constitution and only he can waive it. It cannot be reasonable trial strategy for an attorney to not honor his client's decision to exercise his constitutional right to testify, not because the advice not to take the stand is unsound, but because counsel must in the end accede if the client will not abide by the advice.

Id. at 454.

In this case, the record conclusively establishes that Little was advised of his right to testify and likewise establishes that his attorneys did not prevent him from testifying. At the end of the third day of trial, the following discussion took place in the robing room.

> The Court:          For the record, we have present -- we are in the robing room and we have present in this conference counsel for the defendant, including Mr. Stroud and Mr. Townsend. We have the defendant himself present, Mr. Little. We have the Deputy Clerk and the law clerk, Robin McCoy. And we have the presence of the Marshals and the CSO, whom we thank for their service.

Mr. Jarzabek has waived his presence at this hearing or at this gathering. So, Mr. Stroud, please state the reason for our meeting.

Mr. Stroud:    As I told Mr. Jarzabek, there is absolutely nothing to do with the Government. As you know, I'm co-counsel for Mr. Little, along with Taylor Townsend. I have a very good relationship with Mr. Little. He's been a pleasure to work with. And I think Mr. Townsend would join in with that. He's been receptive to whatever we talk about, and whatever we need him to do, he does it under very difficult conditions because he is incarcerated. But in this case there has been, and it's just a, somewhat of a disagreement. And as I told Mr. Little, that the ultimate decision as to testify is Mr. Little.

I have concerns about his testimony, him testifying in the case that has ranging from his physical state to other tactical reasons. And we've discussed that, and we've had good discussions back and forth. But as I told Mr. Little -- and I think Mr. Townsend would agree with this -- that the ultimate decision, as the Court knows in these cases, is the defendant's. And I wanted just to put on that though I have recommended against testifying for -- and again, for reasons that have nothing to do with whether or not I think he committed the crime . . . . My job is to give the best possible legal advice to him. And it doesn't hurt my feelings if he rejects that advice. And as I told the Court, we worked on potential examination and if Mr. Little wants to testify, I will unhesitatingly put him on the stand and I will present the questions to him that we go over and vigorously guard his rights during any cross-examination.

But I felt like, as an officer of the court, I needed to bring this to the Court's attention ex parte, out of the presence of Mr. Jarzabek, because again, as the Court knows this has absolutely nothing to do with the Government. And again, this does not indicate a dispute I am having with my client; this is simply where we are in the proceedings.

|  |  |
|---|---|
|  | And I'll stress again that if Mr. Little says, "Mr. Stroud, Mr. Townsend, I want to testify," he will be ready to testify. We have been working on that. I'm not going to throw him to the wolves. |
| The Court: | All right. Mr. Little, what do you have to say about that? |
| The Defendant: | I don't know. I mean, I don't know. |
| The Court: | Has Mr. Stroud accurately reflected the nature of the conversations that you-all have had about this? I mean, is that -- |
| The Defendant: | Right. |
| The Court: | Has he adequately described the situation? |
| The Defendant: | Yes, ma'am. . . . |

. . .

|  |  |
|---|---|
| The Court: | Are you saying that you haven't finalized your decision then? Is that what you're saying? |
| Mr. Stroud: | We're going to talk some more. And it's an ongoing. And I just wanted to put this on the record. And again, we'll talk again and tomorrow we'll be ready to go either way. |
| The Court: | All right. Mr. Little, I will tell you that Mr. Stroud is correct, that as a matter of law, it's ultimately your decision. And if they had any concerns about your mental state to make that decision, counsel for the defense should inform the Court of that. But it's ultimately your decision to make. These are fine lawyers; they have statewide reputations at what they do. And I know you probably knew that before you hired them. And certainly the job they have done in this case, in the Court's opinion, has been exemplary. |

|  |  |
|---|---|
|  | Whether or not you testify is a strategic choice, but it's a huge strategic choice, and one that a lot of consideration needs to go into. |
|  | So that is all the Court can really tell you about that. I know how important this trial is in your life, and also how important this decision is that you have to make. |
| Mr. Stroud: | Thank you, Judge. |
| Mr. Townsend: | Judge, the only thing I'd like to add is that I agree. I have heard what Mr. Stroud has said and I agree as well. I would say the same thing Mr. Stroud has said. That does not reflect any problems with our client. We had this discussion with him a couple of weeks ago. And as the closer this matter got to trial, we began those discussions I think a little more frequent and advised him that these are decisions that sometimes can't be made until you hear the Government's case and see what all, how that goes. And I agree. And we will talk about it some more. And it's . . . |
| The Court: | Mr. Little, would you agree with these lawyers' statements that there has not been a breakdown in communication with you y'all? |
| The Defendant: | Oh, no, ma'am. No, ma'am. |
| The Court: | Okay. You're simply weighing the pros and cons of this big decision? |
| Mr. Stroud: | Thank you, Judge. |

Record Document 419-1, pp. 140-145. The following morning, the defense called a few witnesses in its case-in-chief. Following a lengthy break requested by defense counsel,[6] the defense rested. Record Document 419-2, p. 40.

The record confirms that Little was aware of his right to testify and that he knew and understood that the decision was ultimately his to make. He understood that his attorneys counseled against testifying, but also knew that if he disagreed with their advice, they would prepare him for cross-examination. On the record, Little affirmed that his attorneys had conveyed to him the nature of his right, and he agreed with Mr. Stroud's summary of those conversations. The Court itself stressed to Little his right to testify and advised that it was his decision to make. The transcript does not support Little's claim that his attorneys refused to allow him to testify.

In addition, both Mr. Townsend and Mr. Stroud have submitted affidavits in which they affirm that it was their advice, but not their decision, that Little not testify. Each attorney states that Little was advised not to testify because "undersigned counsel felt that if Little testified truthfully at the trial of this matter, his truthful testimony would remove any and all reasonable doubt of innocence." Record Document 471-2, p. 2; 472-3, p. 3. Further, the attorneys state that neither of them "prevented, prohibited or otherwise

---

[6] The transcript reflects that there were actually two consecutive breaks for the defense. The length of the first break is not documented; however, the second break lasted forty minutes. Record Document 419-2, pp. 39-40. It was the Court's impression at the time that the defense was using this time to discuss whether Little would testify or whether the defense would rest its case. See Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013) (explaining that where "the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial.").

stopped Little from testifying." Id. This corroborates the discussions had on the record with the Court, discussed above.[7]

Notwithstanding the above, the Court would be remiss if it did not mention the significant qualification that Little has placed on his claim that he was not allowed to testify. His explanation of the exact way in which his attorneys allegedly prevented him from testifying serves to defeat his claim entirely. That is, Little avers not that he was prevented from testifying altogether, but rather that his attorneys told him if he testified, a local drug dealer would harm his family and/or his wife would be arrested. Thus, it is clear to this Court that Little does not assert that Mr. Stroud and Mr. Townsend refused to allow him to testify over his objection, but rather that they advised him not to testify, possibly because of ramifications related to his testimony, and that he ultimately agreed with that recommendation because of his perception of the consequences. Irrespective of whether his attorneys actually made the aforesaid statements, an attorney's admonitions regarding potential consequences or repercussions that may result from testifying do not amount to hampering a defendant's right to testify. That a defendant may be upset by adverse news from counsel does not render counsel ineffective for delivering that news. The attorneys were required to inform Little of the pros and cons of testifying. That Little felt pressured not to testify because of the possible consequences stemming from his testimony does not mean that his attorneys acted unreasonably in advising him of the consequences or

---

[7] Establishing Strickland prejudice is a "heavy burden." United States v. Wines, 691 F.3d 599, 606 (5th Cir. 2012). "Indeed, as far as we can determine, no defendant in any court in the United States has been able to prove Strickland prejudice on the basis of his counsel advising him not to testify in his own defense at trial." Id.

advising him not to testify.  Little chose not to testify, after consultation with his attorneys.

Because Little cannot demonstrate the deficient performance requirement under <u>Strickland</u>,

his claim fails.

        5.      <u>Little's Counter-Offer to the Government</u>.

Little's next claim is that his attorneys were ineffective for failing to relay his

counter-offer in response to the Government's plea offer.  Little submits that on three

occasions during trial, the Government offered to allow him to plead guilty to one of the

communication device charges (either count seven or count eleven), which, according to

Little, would have resulted in a sentence between one and four years.  Record Document

457, p. 1.  "Petitioner rejected these charges because he had not in fact committed these

crimes." <u>Id.</u>  Little informed defense counsel he would agree to plead to official oppression

or misprision of a felony which, he argues, would have resulted in significantly less prison

time and possibly "as little as probation, i.e., no prison time whatsoever." <u>Id.</u> at p. 12.  He

contends that "any rational trier of fact, would or could have found Little culpable of having

given 'Lulu Thompson a 'little too much rope' figuratively speaking' . . . so as to have

enabled her to violate the law on Little's watch. Which could be deemed to have been

'Official Oppression' (based on their Sexual liasons [sic]), and or, 'Misprison [sic] of a

felony'." <u>Id.</u>  Little asserts that the result of the trial would have been different had counsel

pursued this counter-offer because he would have been "exposed to only zero years

imprisonment . . . . " <u>Id.</u>  Further, even if the local United States Attorney's Office had not

been receptive to this offer, Little argues his attorneys were obligated to pursue the offer to the Department of Justice in Washington, D.C.

In response, the Government relies upon Mr. Townsend's and Mr. Stroud's affidavits, in which they each state that they "conveyed a counteroffer to the government to allow Little to plead to a misdemeanor which offer was rejected by the government. Affiant further states that he and co-counsel communicated an [sic] counteroffer to allow Little to plead guilty to misprison [sic] of a felony which was likewise rejected." Record Document 471-2, p. 3; 471-3. p. 3. Little objects to the affidavits on both legal and factual grounds. First, he contends that his attorneys have violated the rules of professional conduct by appearing in this case as both counsel and witness. Second, he argues that the affidavits are acts of perjury because he "is certain without any doubt" that neither attorney "left the table in the court room [sic], but stated, 'They aren't going to do that', answering for the government without presenting the offer." Record Document 474, p. 2. The Court will address these in turn.

It is settled law that an attorney does not breach a fiduciary duty owed to his client by appearing as a witness in a proceeding in which the lawyer's effectiveness as counsel has been questioned by the client. See Laughner v. United States, 373 F.2d 326, 327 (5th Cir. 1967). "A lawyer may reveal otherwise privileged communications from his clients in order to . . . defend himself against charges of improper conduct, without violating the ethical rules of confidentiality or the attorney-client privilege." United States v. Ballard, 779 F.2d 287, 292 (5th Cir. 1986). The confidential communications between an attorney and

his client are "the one source of evidence likely to contradict" allegations of ineffective assistance of counsel. <u>Laughner</u>, 373 F.2d at 327. A section 2255 petitioner may not "silence the only other source of evidence to rebut his claim." <u>Hume v. Stephens</u>, 2014 WL 988538, *11 (N.D. Tex. Mar. 13, 2014). There is nothing improper, unethical, or unprofessional about Mr. Townsend and Mr. Stroud filing affidavits to contradict Little's allegations in this matter.

With respect to the contention that Little's attorneys failed to convey a more favorable plea agreement, the Court cannot ignore the speculative and conclusory nature of Little's allegations. Little asserts not just that his attorneys failed to communicate his plea offer; he also assumes, with the assistance of a huge leap in logic that is not explained to the Court, that the plea offer would have been accepted. This is utter speculation on Little's part. There is no evidence to suggest the United States Attorney's Office would ever have considered entering into such a plea agreement in this case. Indeed, this was a high-profile public corruption and drug conspiracy prosecution. Little was not, as he now countenances, a mere bystander on the sidelines who was simply "blind[ed]" by the "Wiles of a Woman." Record Document 457, p. 13. Every other defendant in this case pled guilty to a felony offense; thus, Little's speculation cannot convince this Court that the Government would have allowed the lead defendant– a public official alleged to have broken the very laws he swore to uphold– to plead guilty to a misdemeanor with little to no jail time.

However, assuming arguendo that the attorneys did not actually communicate Little's counter-offer to the Government, Little's claim nonetheless fails because he cannot establish a reasonable probability the offer would have been presented to the Court (i.e., that the Government would have accepted the offer and that Little would have been steadfast in his desire to enter a guilty plea) and/or that the Court would have accepted its terms.  See United States v. Rivas-Lopez, 678 F.3d 353, 357 (5th Cir. 2012) (petitioner cannot establish prejudice without establishing a reasonable probability that plea offer would have been accepted by both sides, presented and approved by the court, and result in a more favorable sentence than that imposed); see also Wolfe v. Dretke, 116 F. App'x 487, 496 (5th Cir. 2004) (holding that petitioner did not show Strickland prejudice because he could not prove the state was prepared to offer or accept a plea bargain).[8]  Little's claim thus lacks merit.

6.    Review of the Presentence Report.

Little's next claim of ineffective assistance stems from his assertion that he never reviewed the presentence report ("PSR") and was afforded no opportunity to object to the report's contents.  Little cites no prejudice suffered as a result of this alleged inaction, nor

---

[8] As announced in Missouri v. Frye, 566 U.S. 133, 148 (2012), a defendant who has shown a reasonable probability that he would have accepted an earlier, more favorable plea offer- a standard which strongly suggests that the Government actually proposed the offer--, must also show that there is a reasonable probability that neither the prosecution nor the court would have prevented the offer from being accepted or implemented.  "This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it."  Id. (internal citations omitted).

does he indicate any errors in the PSR or any objections or legal arguments that could or should have been made by counsel.

As Little concedes, this claim plainly contradicts his statements made in open court on the record.  Indeed, at sentencing, the following exchange took place:

| | |
|---|---|
| The Court: | . . .  I know that Defense counsel has reviewed the presentence report.  Is that correct, gentlemen? |
| Mr. Stroud: | Yes, ma'am. |
| The Court: | And Mr. Little, have you had an opportunity to review the presentence report? |
| The Defendant: | Yes, ma'am. |

Record Document 424, p. 3.  Little's claim that he did not review the PSR is in direct conflict with his statements made at the time of sentencing.  He excuses this clear contradiction by averring that his false answer to the Court was "prompted by Attorney Stroud's head nodding and urging Little to answer 'yes.'"  Record Document 474, p. 7.

Assuming without deciding that Mr. Townsend and Mr. Stroud failed to review the PSR with Little prior to sentencing, Little's ineffective assistance claim nevertheless fails because he has not demonstrated prejudice.  Little must show that there is a reasonable probability that, but for his attorneys' errors, the result of the proceeding would have been different.  Here, Little has not identified any way in which his sentence would have been different had he reviewed the PSR before sentencing.  Mr. Stroud strenuously pursued a more favorable sentence for Little.  He filed eleven pages of sentencing objections to the PSR.  He subsequently filed a ninety page sentencing memorandum.  It is clear to the

Court that counsel devoted much time and effort into securing the best possible sentence for Little.[9]

The sentencing transcript negates Little's claim that he did not review the PSR. Further, he has identified no prejudice he suffered as a result. Accordingly, Little's claim that Mr. Townsend and Mr. Stroud were ineffective for failing to review the PSR with him is without merit.

7.    Assistance of Counsel on Appeal.

Little's next claim is that appellate counsel was ineffective for failing to raise all of the foregoing issues on direct appeal. Defendants are entitled to effective assistance of counsel on direct appeal from their conviction. Green, 160 F.3d at 1043. "On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available. . . . Rather, it means, as it does at trial, counsel performing in a reasonably effective manner." Id. (internal citations omitted). To establish prejudice, the petitioner "must show not only that had counsel acted in a different manner a new trial would have been granted, but also that, as a result of counsel's incompetence, the trial was rendered fundamentally unfair or unreliable." Id.; see also Goodwin v. Johnson, 132 F.3d 162, 174-75 (5th Cir. 1997) (prejudice inquiry with respect to claim of ineffective assistance of appellate counsel "hinges upon the fairness of the trial and the reliability of the judgment of conviction resulting therefrom.").

---

[9] Little's exhibits do not establish otherwise, despite his depiction of them.

The only fact alleged by Little in support of his claim is that Mr. Stroud "spent very little effort in the defendant's appeal efforts as evidence [sic] by the attached letter, with him offering an excuse as to why he did not." Record Document 474, p. 8. In the letter referenced above, Mr. Stroud apologizes to Little for failing to provide him with an advance copy of the appellate brief and record excerpts that Mr. Stroud filed with the Fifth Circuit. He states, "I am sorry that I did not get a copy to you before the filing deadline, but I simply ran out of time." Record Document 474-2, p. 1. Contrary to Little's subjective interpretation of Mr. Stroud's letter, objectively the letter does not establish that Stroud made a less than valiant effort on appeal, or that he performed deficiently, which is required under the first prong of Strickland.

Notwithstanding the above, Little has also failed the second prong of Strickland because he has not even attempted to establish prejudice. He has not explained how or why the alleged failures in the district court rendered the trial fundamentally unfair or his conviction unreliable. Because Little has alleged no specific facts to show that he was prejudiced by Mr. Stroud's performance on direct appeal, his claim of ineffective assistance of counsel on appeal must fail.

8. Cumulative Error Doctrine.

In Little's final challenge, he asserts that cumulative error requires his conviction and sentence to be vacated. That is, in the event the other alleged errors do not constitute ineffective assistance of counsel, Little argues that a series of errors warrants relief. Record Document 457, pp. 14-15; 474, p. 8. There is no precedent to support the idea

"that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in <u>Strickland</u>." <u>United States v. Thomas</u>, 724 F.3d 632, 648 (5th Cir. 2013). Given that this very argument has been rejected by the Fifth Circuit, this Court rejects it likewise.

## CONCLUSION

For the foregoing reasons, based on the record and the relevant jurisprudence, this Court finds that Little has failed to demonstrate that either his trial counsel or his appellate counsel performed deficiently, and that any deficiency in counsels' performance prejudiced Little under <u>Strickland</u>. Therefore, Little's § 2255 motion [Record Documents 456 & 457] be and is hereby **DENIED**. Any other motions pending in this case are likewise **DENIED as moot**, and this matter is hereby **DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Little has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this __18th__ day of April, 2018.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE